Thank you, Judge. May it please the Court and the Counsel. Judge, my name is Eric Butz and I represent Porfirio Ortega. We have filed a brief in which we raise two issues. One is the Before you argue, the Court appreciates, first, your service as appointed counsel under the Criminal Justice Act. Second, your willingness to reschedule at our request. It was no problem at all. Thank you, Judge. In which Mr. Ortega raises two issues. There's one we address that the District Court erred in denying his motion for judgment of acquittal. The basis of our argument in that instance is that there was no credible evidence that Mr. Ortega was involved in more than five kilos of cocaine. In summary, our argument would be that his involvement with the conspiracy terminated somewhere in early March. In my brief at page 22 and 23, I incorrectly note the David Morales purchases March 28th. In fact, it was February 28th. The record is clear that throughout Mr. Ortega's association with Eldon and others beginning as early as November 2nd to November 9th, there was a lot of conversation among the participants in the conspiracy that Mr. Ortega either didn't have any drugs or he was a criminal. And as early as November 9th, I'm sorry, as early as November 9th, Eldon told the government's confidential informant, Mr. Tutiano, that Mr. Tutiano should deal with him directly as opposed to Porfirio Ortega. Later on, as buys were made from Porfirio Ortega, they would oftentimes be made from other individuals. There were a number of conversations between Mr. Ortega and Mr. Tutiano in which Mr. Ortega would say that he was going to Chicago or Houston or other places to look for drugs and he would come back without any drugs. In February 28th, that's an instance where David Morales purchased some drugs through Porfirio Ortega through one of Mr. Ortega's nephews. After that incident, well Mr. Ortega was in Chicago at that time. After that incident, Mr. Ortega was released. In my conversations with Mr. Tutiano, Mr. Tutiano agreed that in early March, when Tutiano had conversations with Ortega, Ortega told him several things. Number one, that Eldon was not providing him with any kilos of cocaine anymore. He was unable to get any cocaine from Eldon and also he was unable to find any anywhere. The March date also corresponds with when Tutiano testified that he then turned his focus and the prosecution's focus away from Mr. Ortega to Eldon in order to try to gauge Eldon's involvement in dealing drugs. There is absolutely no involvement of Porfirio Ortega from the early March date until April 17th when he calls Eldon while Porfirio Ortega is, I believe, in Houston and tries to arrange for some sort of deal with Eldon where Eldon is going to buy some drugs. Porfirio was going to try to act as a middleman. And during that conversation, I think it's notable that Eldon makes reference to the fact that he doesn't like it when Porfirio Ortega lies, and that would be government's appendix at page 66, doesn't like him when he lies and also wants Ortega to call him back and let him know when the deal is going to happen. There was a subsequent conversation on April 17th at about 630 in the evening at which time Porfirio then suggested and told Eldon that Eldon would deal directly with someone else in Houston. Porfirio would get a cut of that deal, whatever it was. I think that's more properly a buyer-seller relationship at that point. Why couldn't the jury take into attribute the 7 kilograms hidden in Lopez Rico's car in late March? Well, I think we actually address that in two instances. Number one, there is no evidence that Porfirio Ortega was dealing with Eldon or Miso Lopez or anyone else in late March. There doesn't have to be. There's no withdrawal evidence. Well, and the government raises that, and I think that our position is and has always been that when an individual stops dealing with the organization, and our belief is he stopped dealing with the organization, it's shown not only by his conversations with Tutiano, but the fact that there's no evidence that he's selling drugs to anyone. I understand the court's question and the case law that has come out of this court. I think it's somewhat perplexing for defense counsel because we don't know how to argue that our client stopped dealing with someone other than he stopped dealing with them. Well, I know, but you're challenging a jury quantity finding. And the reason we're challenging that is because . . . We find most favorable to the jury. Exactly, Judge. And so that was underlying my question. Why couldn't the jury reasonably consider if there hadn't been any withdrawal, these were his conspirators, seven more cocaine, kilograms, after the two-kilogram press incident in February. And the kilograms at that time were brought by Eldon. They weren't provided by . . . Certainly the jury could consider it, and I would . . . I'd have to guess that the jury did consider it. We don't think that it was reasonable for them to do so because there's no evidence of Porfirio Ortega's involvement after early March. I don't have Porfirio Ortega taking any affirmative steps that I could point to. I don't think that in typical drug conspiracies or drug deals are there affirmative steps. I think people stopped dealing with someone. People stopped providing them with drugs of any type. People stopped selling. But again, there is no evidence that Porfirio Ortega dealt with these individuals after early March. What about Exhibits 46 and 47? Excuse me? What about Exhibits 46 and 47? Wasn't there a vehicle stopped in March? How much was involved in that? There was a vehicle stopped in late March in St. Charles as a result of a DEA Title III overhear of Eldon's telephone. And the belief was that it was a purchase orchestrated by Eldon. I believe it was driven by Misal Lopez. Seven kilos of what was purportedly cocaine was found. Is that what the court's referring to? That was part of the government's case. Exactly. And again, our belief insofar as efficiency is that Mr. Ortega was no longer involved with the conspiracy, would have had no knowledge of that. It would not have been reasonably foreseeable to him. He wasn't part of the conversation. He was no longer dealing with Eldon. Eldon was no longer supplying him. But this was during March? Excuse me? This was during March? Yes, ma'am. Yes, Judge, I'm sorry. During late March. March 25th. So there was an exact date in March from which he did nothing more? From the time that there is no evidence that he did anything following George Tutiano's, well, if you will, recovery of the cocaine press, which I believe was March 7th or 8th, somewhere around that time. That was following Porfirio Ortega took a trip to Chicago. I believe it was March 1st. On March 3rd there was a conversation between Eldon and Tutiano in which Eldon was convinced that Ortega was a snitch because he had been released so quickly by the police. And Tutiano acknowledged that he had no dealings with, no purchases from Ortega at that time, or following that time. And at that time there were also conversations between he and Tutiano in which Tutiano acknowledged that Porfirio told him that he's not, Eldon's not providing any narcotics to him. He's not providing any drugs. He's not getting anything from Eldon. And that was in the volume 2 of the transcript that I believe 74 78 and 79. I'm sorry. The second issue we raise has to do about what we perceive as a trial court's error in admitting government's exhibit 37. In my argument I characterized it as 37. It was 37. What's interesting to me there is it seems to me the government has a point that this was a foundation not a hearsay issue because the beer's report was not put into evidence. The objection to what Ousley, if I got the name right, to his testimony, which I guess is the basis for the bullcombing of 6th Amendment issue, he did his own testing and then the jury was invited to find, as it did, that these 13 packages were what they were purported to be. So to the extent that we had, that there was testing and reporting by a laboratory person who didn't testify, wasn't it simply merely a foundation issue? Well, Ousley relied on beer's report and in fact Ousley only tested the composites. He didn't test the other bags. The prosecution argued in closing that it was 7 kilos of cocaine. If it were a foundation and were not concerned with the amounts other than the composites, the government would not have asked the court to admit 7 kilos of what they alleged to be cocaine. What's the hearsay then? Excuse me? What's the hearsay evidence? The hearsay is that Ousley relied on beer's report. In the transcript he said that he did testify that the entire bags were previously analyzed and found to contain cocaine hydrochloride. At 171 he testified that after the exhibits are analyzed internally and they're identified chemically, then the composite is formed. And during cross-examination he did acknowledge that he looked at and relied upon beer's report. Did he testify to the results of beer's testing? Or simply give background description as to how he came to do the limited testing he did? Again, Judge, our argument is that he in fact incorporated beer's testing in his testimony, particularly where he said that the bags were analyzed internally, they were found to contain cocaine hydrochloride, and then the composite was formed. He said that the other chemists tested all the packages, he only tested the composites. But I thought your objection was to the physical evidence, not to the testimony. Our objection was that it should not have been admitted as cocaine because it was hearsay. Well, it wasn't admitted as cocaine, it was just admitted as a physical exhibit, and then the question was whether the testimony established that it was cocaine, presumably. The judge doesn't say this is admitted as cocaine. Whether it's cocaine is an issue for the jury. They moved for admission of it as cocaine. I mean, that was the whole point in introducing the composites and the seven kilos, was to show that it was cocaine. No, it was admitted, and then they presented evidence that there was cocaine in there. Well, there was cocaine in the composites. There was no evidence submitted that there was cocaine in the rest of it because Ostley didn't examine the rest of it. Well, did you dispute that the composites that he tested came out of the bags? Yes, I did, as a matter of fact, because I asked him whether or not he watched Christine Beers do the test. Do we know that she put something from all of the bags in there? And he said that's standard practice, but no, I don't know that. Okay, so that would be a foundation problem for what? All of the bags? Some of the bags? What bags should not have been admitted? Everything except the composites. There was no credible evidence that the Why wouldn't that be? If the composites were okay, why are we talking harmless air? Well, because it increased the likelihood that he was convicted of five kilos or more. That was critical in the government, getting over the five kilos The seizure from Lopez, this was the March 20th? Yes, yes, Judge, I'm sorry. Yeah, I mean, but for that I think we have a good argument, given the fact that 605 grams total is what testified to was directly obtained from Porfirio or from his house or from someone he'd sent to him. I think that we had a much different case. But when the witness testified that the composite was formed by taking a portion from each of the seven bags I don't see an objection to that testimony. I objected at the beginning, and the judge said I'm going to admit it, and I objected at the end. And the prosecution did raise this issue, Judge. And I acknowledge that perhaps I should have jumped up at that point, but I objected both after one of the assistant United States attorneys moved for admission and at the very end. Well, my question is, if the evidence came in that the part he tested came from the bags, if that came in without objection then what's the basis for your objection to admitting the bags? Because the bags were not tested by him, and I did ask him on cross, did you see her do it? No, so you don't know what she did. Right, I understand that, but that means the jury has to decide whether it can infer from the testing of the composite that the bags contained the same thing. Exactly. Why isn't that a jury issue? Why do you have to have And that was the government's argument, was that that's what it came from. And in cross I honestly acknowledge that he had no idea whether the composites came from each bag. The composite was comprised from each bag. And again, that's why I objected at the end that for it to be admitted as cocaine violated Crawford, Volkhoff, and Menendez because there was no evidence that the other, other than the composite contained cocaine. But none of those Supreme Court cases involve physical evidence. They're always talking about the reports that didn't come in here. So where's the Sixth Amendment violation? Well, again, I understand I understand your probably legitimate objection to the foundation for the at least the bags that Mosley did not himself test. I can't get from there to a Sixth Amendment violation. He did rely upon her report. But what case says that relying on a report violates the admitting a report without allowing confrontation of its preparer? Again, our position, I understand what the Court is saying. I suppose that gets into the Illinois, Williams, and Indiana case. But again, in this case, he did say that he relied upon her  Well, those Supreme Court cases are not easy to deal with. Ms. Gravis? Good morning. I'm Jeanette Gravis. I'm an Assistant United States Attorney, and I'm representing the United States in this matter. With regard to the sufficiency of the evidence, there is overwhelming evidence that the defendant Well, let's talk about where we've been. If Osley describes the testing that Beer did, if that's admitted to prove the truth of the testimony, that is that Beer did actually test these bags and did determine there's cocaine in there, why doesn't that fall within Melendez Crawford? He didn't testify that Beer had tested the bags and that she had come to a conclusion that the bags contained cocaine. He didn't testify to that. I thought he just kind of read the testimony. There's nothing in the record where Osley testified that Beer came to the conclusion that anything contained in the government's exhibits 37B and C contained cocaine. Well, what about the fact that, did he testify that Beer took the composite out of each of the bags? He did testify to that. Would that testimony by Osley be reporting an out-of-court statement by Beer, who told him that I took this composite sample out of the seven bags? My position about that particular statement is that it's not testimonial. As Osley was testifying, he's holding government's exhibit 37B and 37C. There were 11 containers of cocaine that were seized on March 25th. Four containers were contained within government's exhibit 37B and seven within government's exhibit 37C. When the jury viewed these exhibits, there were five containers with cocaine in government's exhibit 37B and eight within government's exhibit 37C. Osley's testimony was representing what this physical evidence looked like as a matter of foundation and why it was in a different quantity than was originally seized from the car on March 25th. But I'm talking about how the government proved that what he tested came from the bags that were seized from the defendant. And I thought he was relying or reporting, actually, that Beer told him that she created the composite by taking an amount out of each of the bags. He did testify to that. And you say that's not testimonial? It's not testimonial. It's offered to explain the condition in which the bags were presented as evidence at trial. Why wouldn't it be a testimonial statement by Beer? Because she didn't make the statement and her report wasn't introduced at trial. But didn't she tell Osley either in person or through her report that I took this composite sample out of the bags seized from Ortega? Osley didn't testify to that. He testified he began his testimony with an analysis of a different package of cocaine which had been purchased by Tutiano from Ortega, a different exhibit, and he explained that when he purchased that exhibit, that as part of the process, he removes a sample from the total quantity that he originally weighs. And that there's a sample contained within the container and then the total quantity. Then he began to testify about Government's Exhibits 37B and C and explained, and he did, he said that Beer had removed samples from each of the packages. But I'm submitting to the Court that that testimony, first of all, it wasn't offered for the truth of the matter asserted, but I'm asserting that it's not testimonial at all because he's just explaining why the packages are in that condition which is consistent with his previous testimony about how the packages are tested. Why wasn't it offered for the truth of the matter? Didn't the Government have to prove that what he tested came from the bags that were seized from Ortega in order to make the case? Well, the Government had to prove that the sample that he tested was cocaine. But it only proves the case if that sample came from Ortega's bags. That's correct, Your Honor, but if we're in a situation where, I mean, I suppose a better practice would be for him to individually test from each of the packages, but that's not what we had in that circumstance. And there was no objection drawn from the defendant at the time he testified to the fact that the samples from the other packages, it wasn't objected to. So B and C were just the two composite bags? B and C contained Government's Exhibit B contained four. Yeah, this. Yes. So Government's Exhibit B contained the greenish looking packages with a separate composite sample. So all 11 plus the two composites were in evidence? Yes. And the jury was told what about the contents of the four and the seven? The contents of the four were contained in Government's Exhibit 37B and that there was a fifth package within Government's Exhibit 37B which contained samples from each of the four. That was Ostley's composite? Correct. No, well, it was Beer's composite. Beer created it. Yes. And Ostley tested it. Correct. And what's Exhibit 38? Government's Exhibit 37C is the blue packages plus an additional small package which contained a composite. So you're saying when Ostley testified that Beer created the composite there was no objection? Correct. And so the standard would be plain error and there isn't, I submit that there's no plain error in the admission of these packages as cocaine but the defendant argued in closing argument that the jury shouldn't consider that they were cocaine because Ostley only testified the composite and the jury was free to believe that they did not contain cocaine and not consider those packages in their deliberations. We don't know whether or not they did or not because there was considerably more than the 7.2 kilograms of cocaine that were distributed throughout the course of the conspiracy directly by Porfirio Ortega. Now both lawyers have said the bags were admitted as cocaine. I don't understand that. Did the judge say these are cocaine? No, and in fact when I originally sought to admit the packages, I sought to admit them before the testimony of Peter Ostley but the judge reserved admission until after I introduced the opinion. I assume the foundation for the 11 was that they were found in the car. In the car. And I originally sought admission when I introduced them and the court did not admit them until Peter Ostley testified. Okay, but that would strike me as adequate foundation for the 11. My argument is it's the physical evidence that comes in whether or not it's cocaine. Well, it's not foundation for the two. No, not for the composites. You're correct, Your Honor. You needed either beer or in this case you thought it was okay to use a silly for those. Correct. For both the creation and the testing of the two. You didn't put any evidence of any testing of the 11, is that right? That's right, Your Honor. So the only testing results or testimony were related to the composite. That's correct, Your Honor. And the jury was invited to believe that the composite was taken from the 11 and therefore if the composite had cocaine so did the 11. Yes, but that was your case. It was my case, but in my closing argument Your Honor, I argued that it didn't really matter whether they believed or didn't believe Ostley's testimony because the cocaine or the packages that were found concealed in the car must have been cocaine because the organization was distributing cocaine. They were concealed up in a hidden compartment in a car being traveled from Kansas City after phone calls were intercepted indicating that there was a load of cocaine coming from Kansas City. So there was other evidence besides the testing, you mean? Significantly more evidence. There was also evidence introduced that Misael Lopez Rico, who was driving the car, gave a false name of Axel Diaz at the time that he was arrested, which is also an indication that the substance inside the car was contraband. And what ties Ortega to those drugs? Your Honor, throughout the case Misael Lopez Rico was referenced in telephone calls with Porfirio Ortega and in one of those telephone calls Porfirio Ortega directed Angel Sanchez-Cortez and Rodolfo Sanchez-Ortega to Misael Lopez Rico to retrieve the cocaine to give it to David Morales. And David Morales testified that he had on one occasion received the cocaine from Misael Lopez Rico. So the jury had an understanding that Misael Lopez Rico was a courier for the organization and that the cocaine was being distributed at Porfirio Ortega's instruction. Would you like me to address any additional evidence regarding the five kilograms of cocaine? Go ahead. With regard to Porfirio Ortega's withdrawal from the conspiracy there is no evidence of a withdrawal and in fact the evidence is that he continued in the conspiracy. There was a transaction on February 28th between David Morales and Porfirio Ortega and this is the one that actually involved Misael Lopez Rico. Then less than four weeks later Misael Lopez Rico was arrested with 7.2 kilograms of cocaine on his way from Kansas City. And then a couple weeks after that on April 17th of 2011 there were three telephone calls between Porfirio Ortega and Felix Rodriguez Arriola during which they were discussing the distribution of cocaine. During the first call Porfirio Ortega mentioned to Felix Rodriguez Arriola that he had a guy that he sold to every three or four days. And so that, his own statement indicates that he had not withdrawn from the conspiracy. He was talking about his continued sale of cocaine. Then in the subsequent conversation Porfirio Ortega told Felix Rodriguez Arriola that he was in Texas and that he was able to get Felix Rodriguez Arriola at least five kilograms of cocaine. They negotiated the price of the cocaine anywhere from $26,000 to $27,000 when they finally agreed upon $26,500. And Porfirio Ortega requested more than five kilograms during that conversation. At the closing of the conversation Porfirio Ortega indicated that he could get it done and that he could get the five kilograms. So if you take only that call in isolation the jury reasonably could have found when considering the evidence in the light most favorable to the government that the defendant was responsible for more than five kilograms personally. Does the court have any questions? Thank you. He has a minute forty-five. Judge, I'm somewhat perplexed. If it wasn't introduced in order to, by that I mean government says give it 37 B and C to show the jury that it was cocaine, I don't know why it was introduced. It certainly was testimonial. I mean Peter Ostley said I tested the composites that came from the drugs or the packages of cocaine and I know this because I looked at Christine Beer's report. It wouldn't have made any sense for me to object to Christine Beer's preparing the composite she wasn't there. I mean I objected to the introduction of the evidence in total. Why wouldn't it have made sense to object when he reported what Beer's told him? I don't know what the basis of the objection and she didn't tell him he was referring to her report. He read her report and in his cross-examination when I asked him about it, he said that he didn't know if she did or not. It was standard practice. So he was testifying as to standard practices that were performed in the lab. But then he went on to say that he didn't see her doing it, didn't know if she did or not. Insofar as the conversations between Porfirio Ortega and El Don on April 17th, I'm sure that when the court looks at those, they'll be as troubled by them as I am because Porfirio Ortega says that he was looking for El Don. He hasn't seen him in several weeks. He didn't know if he was there. The person who was purportedly buying from him, I think the conversation was that he comes by or he does something two or three times. He said he didn't talk to him anymore because he couldn't find El Don. If there was an ongoing relationship, if Porfirio Ortega was part of El Don's conspiracy, it would seem like that wouldn't have been the case. It would seem like El Don and he would have been in closer communications or Porfirio would have been able to provide drugs. But quite simply, after the early March date, Porfirio was unable to provide drugs to anyone and there's no evidence he did. Thank you, Judge. Thank you very much for considering this. Thank you, Counsel. The case has been well briefed and argued. Again, thanks for the rescheduling. We'll take it under advisement.